Marc L. Godino
Email: mgodino@glancylaw.com
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: 310-201-9150
Facsimile: 310-432-1495

Paul C. Whalen (*Pro Hac Vice* to be filed)
Email: paul@paulwhalen.com
**LAW OFFICE OF PAUL C. WHALEN, P.C.**
768 Plandome Road
Manhasset, NY 11030
Telephone: 516-426-6870
Facsimile: 212-658-9685

Brian Murray (*Pro Hac Vice* to be filed)
Email: bmurray@glancylaw.com
**GLANCY PRONGAY & MURRAY LLP**
230 Park Avenue, Suite 530
New York, New York 10169
Telephone: 212-682-5340
Facsimile: 212-884-0988

Jasper D. Ward (*Pro Hac Vice* to be filed)
Email: jasper@jonesward.com
**JONES WARD PLC**
1205 E Washington St, Suite 111
Louisville, Kentucky 40206
Telephone: 502-882-6000

*Attorneys for Plaintiff and the Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONNOR WIIK, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED<br><br>CLASS ACTION |

Plaintiff Connor Wiik ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class Members"), brings this class action complaint against defendant Facebook, Inc. ("Facebook" or "Defendant") based upon personal knowledge with respect to himself and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters. Plaintiff believes substantial additional evidence exists for the allegations set forth below and will be uncovered after a reasonable opportunity for discovery.

## I.    OVERVIEW

1.    This is a consumer class action against Facebook seeking to redress injuries suffered by Plaintiff and Class Members as a result of Facebook's failure to secure and safeguard the sensitive personally identifiable information ("PII") collected from Plaintiff and other Class Members by Facebook in connection with their use of Defendant's website and/or mobile device application.

2.    Facebook requires its users to provide PII upon creating an account and in the course of its business, Facebook collects and maintains an extensive amount of its users' personal information including, without limitation, names, email addresses, telephone numbers, dates of birth, credit card numbers, private messages, application permissions, locations, education and work history, and photographs.

3.      Users expect Facebook to maintain strict confidentiality of the PII in its possession.

4.      However, Defendant failed, and continues to fail, to provide adequate protection of its users' PII and has egregiously failed to provide sufficient and timely notice or warning of potential and actual cybersecurity breaches to its users.

5.      On September 28, 2018, Facebook first issued a statement announcing that it had "discovered that an external actor attacked our systems and exploited a vulnerability" that allowed them to "steal Facebook access tokens which they could then use to take over people's accounts" (the "Data Breach").[1] The Data Breach impacted almost 50 million Facebook user accounts.

6.      According to the statement and a subsequent press call, Defendant learned of the data breach as early as September 16, 2018, but has not yet directly informed or notified its users that their PII may have been compromised as a result of the Data Breach."[2]

7.       The vulnerability in Facebook's code was introduced in July 2017, and Facebook is currently unaware of how long since that date the attackers have had access to its users' PII.[3]

---

[1] "Security Update," Facebook Newsroom, *available at* https://newsroom.fb.com/news/2018/09/security-update/ (last visited Oct. 5, 2018).
[2] "Afternoon Press Call," Facebook Newsroom, Sept. 28, 2018, transcript *available at* https://fbnewsroomus.files.wordpress.com/2018/09/9-28-afternoon-press-call.pdf (last visited Oct. 5, 2018).
[3] *See* https://techcrunch.com/2018/09/28/everything-you-need-to-know-about-facebooks-data-breach-affecting-50m-users/ (last visited Oct. 5, 2018).

8.     Defendant failed, and continues to fail, to provide adequate protection of its users' PII and has egregiously failed to provide sufficient and timely notice or warning of potential and actual cybersecurity breaches to its users.

9.     As a result of Defendant's failure to maintain adequate security measures and timely security breach notifications, Facebook users' PII has been compromised and remains vulnerable. In fact, according to Facebook, they "have yet to determine whether those accounts were misused or any information accessed." Due to Facebook's ongoing and incomplete investigation, its users have no guarantee that the above security measures will adequately protect their PII. As such, Plaintiff and other Class Members have an ongoing interest in ensuring that their personal information is protected from past and future cybersecurity threats.

10.     Facebook users have suffered an ascertainable loss in that they must undertake additional security measures, some at their own expense, to minimize the risk of future data breaches including, without limitation, canceling credit cards associated with their Facebook accounts and changing passwords to Facebook, Instagram, and other linked accounts.

11.     Additionally, the compromised PII is sufficient to make fraudulent charges to the accounts of Plaintiff and Class Members or establish fraudulent accounts using their identities.

12.     At all relevant times, Facebook has employed sub-standard security measures to protect its users' PII.

13.     The PII of Plaintiff and Class Members was compromised due to Facebook's acts and omissions and its failure to properly protect this PII.

14.     Many high profile data breaches have occurred in the past few years, putting Facebook on notice that it might be the target of a cybersecurity attack like the Data Breach.

15.     Facebook could have prevented the Data Breach. Facebook disregarded the rights of Plaintiff and Class Members by: (i) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its data systems were protected; (ii) failing to take available steps to prevent and stop the Data Breach from happening; (iii) failing to disclose to its customers that it did not have adequate computer systems and security practices to safeguard PII; (iv) failing to take available steps to prevent and stop the breach from ever happening; and (v) failing to monitor and detect the breach on a timely basis.

16.     Had Facebook implemented and maintained adequate safeguards to protect the PII entrusted to it by its customers, deter the hackers, and detect the Data Breach within a reasonable amount of time, it is more likely than not that it would have been able to prevent or limit the Data Breach.

17.     As a result of the Data Breach, the PII of Plaintiff and the Class Members has been exposed to criminals and is ripe for misuse.

18.     The injuries suffered by Plaintiff and Class Members as a direct result of the Data Breach include:

a.      the unauthorized use of their PII;

b.      the theft of their personal information;

c.      the costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

d.      the damages arising from the inability to use debit or credit card accounts because those account were suspended or otherwise rendered unusable as a result of fraudulent charges stemming from the Data Breach (e.g., the loss of cash back rewards);

e.      the loss of use of and access to account funds and the costs associated with inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects to their credit (e.g., decreased credit scores and adverse credit notations);

f.      the costs associated with time spent attempting to mitigate the actual and future consequences of the Data Breach, including finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection

services, imposing withdrawal and purchase limits on

compromised accounts, and the stress and nuisance of dealing

with issues caused by the Data Breach;

g.     the imminent and impending injury flowing from fraud and

identify theft as the result of their PII being placed in the hands

of criminals;

h.     the damages to and diminution in value of their PII, which was

entrusted to Facebook for the sole purpose of purchasing

products and services from Facebook and with the mutual

understanding that Facebook would safeguard Plaintiff's and

Class Members' PII against theft and not allow others to access

and misuse their information;

i.     the continued risk that their PII, which remains in the

possession of Facebook, will be breached again. The PII is

subject to further breaches so long as Facebook fails to

undertake appropriate and adequate measures to protect

Plaintiff's and Class Members' PII in its possession.

19.     The injuries to the Plaintiff and Class Members were directly and

proximately caused by Facebook's failure to implement or maintain adequate data

security measures for the PII. Facebook failed to take steps to employ adequate

security measures despite recent, well publicized data breaches.

20.     Furthermore, Facebook exacerbated the situation by failing to detect the Data Breach earlier and failing to adequately notify its users of the breach. Had Facebook detected the breach earlier, less PII would have been stolen and with timely notification of the Data Breach, customers would have been able to take earlier action to mitigate their damages.

21.     Plaintiff retains a significant interest in ensuring that his PII, which remains in the possession of Facebook, is protected from further breaches, and seeks to remedy the harms he has suffered on behalf of himself and the Class Members.

22.     Plaintiff, on behalf of himself and the Class Members, seeks damages, equitable relief (including injunctive relief to prevent a reoccurrence of the Data Breach and the injuries flowing therefrom), restitution, disgorgement, reasonable costs and attorneys' fees, and all other remedies this Court deems proper.

## II.     JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because (i) the class has more than 100 members, (ii) at least one of the members of the proposed class is of diverse citizenship from Facebook, and (iii) the total amount in controversy exceeds $5 million exclusive of interest and costs.

24.     This Court has personal jurisdiction over Facebook because a substantial portion of the wrongdoing alleged in this Complaint took place in this

District. Facebook's principal place of business is in this District and has sufficient minimum contacts with this District.

25. Venue in this Court is proper under 28 U.S.C. § 1391 because a substantial part of the acts or omissions giving rise to the claims in this action occurred in this District and Facebook has conducted business in this district, and has availed itself of California's markets through its marketing and operations of its social networking websites and mobile applications.

## III. PARTIES

26. Plaintiff resides at 48 Carmine St #3, New York, NY 10014, and was a citizen of New York during the period of the Data Breach.

27. Facebook is a social media company that is incorporated in Delaware and headquartered at 601 Willow Road, Menlo Park, California 94025.

## IV. FACTUAL ALLEGATIONS

### Background

28. Facebook created and operates social networking websites and mobile applications that facilitate private and public communications among its users. By the end of 2017, Facebook had more than 2.2 billion active users.

29. Facebook collects PII from users when an account is established and as users interact with their website and mobile application. Users expect Facebook to maintain strict confidentiality of the PII in its possession.

30.     In the course of its business, Facebook collects and maintains an enormous amount of its users' personal information including, without limitation, users' names, email addresses, telephone numbers, dates of birth, credit card numbers, private messages, application permissions, locations, education and work history, and photographs. Users provide this personal information to Facebook in reliance on Defendant's assurances as to the protection and security of their PII.

31.     Facebook has repeatedly assured its users that their privacy and security is of the utmost importance. Facebook's Data Policy represents to its users that it "[p]romote[s] safety, integrity, and security" by "us[ing] the information we have to verify accounts and activity, combat harmful conduct, detect and prevent spam and other bad experiences, maintain the integrity of our Products, and promote safety and security on and off of Facebook Products."[4] Before the Data Breach, Facebook stated that it was "putting stronger protections in place to prevent future abuse of our platform" in order to protect user privacy and keep the Facebook community safe.[5]

***The Data Breach***

32.     Despite these assurances, Facebook recently revealed that its users' personal information was compromised in a massive security breach.

---

[4] Facebook, Data Policy, https://www.facebook.com/privacy/explanation (last visited Oct. 5, 2018).
[5] Facebook Help, How is Facebook working to keep its community safe?, *available at* https://www.facebook.com/help/208040513126776?helpref=popular_topics (last visited Oct. 5, 2018).

33.     On September 28, 2018, Facebook first issued a statement announcing that it had "discovered that an external actor attacked our systems and exploited a vulnerability" that allowed them to "steal Facebook access tokens which they could then use to take over people's accounts."[6] The Data Breach impacted almost 50 million Facebook user accounts.

34.     Facebook learned of the Data Breach as early as September 16, 2018,[7] but as of the date of this Complaint has not yet directly notified Facebook users that their PII may be compromised as a result of the breach.

35.     Facebook stated that instead of notifying users of the Data Breach, Facebook "began logging users out" on the evening of September 27, 2018 (without directly informing those users why they had been logged out).[8] Facebook explained that:

> attackers exploited a vulnerability in Facebook's code that impacted "View As" a feature that lets people see what their own profile looks like to someone else. This allowed them to steal Facebook access tokens which they could then use to take over people's accounts. Access tokens are the equivalent of digital keys that keep people logged in to Facebook so they don't need to reenter their password every time they use the app.[9]

---

[6] "Security Update," Facebook Newsroom, *available at* https://newsroom.fb.com/news/2018/09/security-update/ (last visited Oct. 1, 2018).
[7] "Afternoon Press Call," Facebook Newsroom, Sept. 28, 2018, transcript *available at* https://fbnewsroomus.files.wordpress.com/2018/09/9-28-afternoon-press-call.pdf (last visited Oct. 5, 2018).
[8] *Id.*
[9] "Security Update," Facebook Newsroom, *available at* https://newsroom.fb.com/news/2018/09/security-update/ (last visited Oct. 5, 2018).

36.     The vulnerability in Facebook's code was introduced in July 2017. It is unclear when after that date the attackers first gained access to Facebook users' PII.[10]

37.     As a result of Facebook's failure to maintain adequate security measures and timely security breach notifications, users' PII has been compromised and remains vulnerable. In fact, according to Facebook, they "have yet to determine whether those accounts were misused or any information accessed."[11] Due to Facebook's ongoing and incomplete investigation, Facebook users have no guarantee that Facebook has protected or will adequately protect their PII. As such, Plaintiff and other Class Members have an ongoing interest in ensuring that their PII is protected from past and future cybersecurity threats.

38.     The insufficient security policies and procedures implemented by Facebook is a material fact that a reasonable consumer would consider when deciding whether to create an account and provide Defendant with personal and confidential information. Had Plaintiff and other Class Members known that Defendant failed to employ necessary and adequate protection of their personal information, they would not have created a Facebook account or limited the PII shared with Facebook. Plaintiff and other Class Members relied on Facebook's "Privacy Principles," which ensure that "We work around the clock to help protect

---

[10] *See* https://techcrunch.com/2018/09/28/everything-you-need-to-know-about-facebooks-data-breach-affecting-50m-users/ (last visited Oct. 5, 2018).
[11] "Security Update," Facebook Newsroom, *available at* https://newsroom.fb.com/news/2018/09/security-update/ (last visited Oct. 5, 2018).

people's accounts, and we build security into every Facebook product. Our security systems run millions of times per second to help catch threats automatically and remove them before they ever reach you."[12]

***Plaintiff's Use of Facebook***

39.     Plaintiff has been a Facebook user for the past nine years and provided Defendant with PII including but not limited to his name, account password, telephone number, email addresses, AOL Instant Messenger username, date of birthday, gender, language spoken, locations, work and education history, and photographs.  Plaintiff has also used Facebook to log in to 159 different apps and websites.

40.     Plaintiff is informed and believes that his PII was compromised as a result of the Data Breach because on September 28, 2018, his Facebook account was logged out by a party other than Plaintiff and, based on publicly available information, Plaintiff understands that those accounts affected by the breach were logged out by Facebook. Plaintiff was prompted by Facebook to re-enter his login information.

41.     After logging back into his account on September 30, 2018, Facebook issued Plaintiff a "security update" on the Facebook website "about recent action that we've taken to secure" his account. Facebook stated that it "may have recently logged you out of your Facebook account," and explained that it had "discovered

[12] Facebook's Privacy Principles, *available at* https://www.facebook.com/about/basics/privacy-principles (last visited Oct. 5, 2018).

an attack on our system where attackers stole Facebook access tokens." Facebook also stated that it did not "know yet if anyone's Facebook information was accessed."

42.     Aside from the notification on Facebook's website, Plaintiff has received no email or other communication from Facebook regarding the Data Breach. Moreover, Facebook has not notified Plaintiff that his account information and PII was compromised as a result of the Data Breach.

43.     As a result of the Data Breach, Plaintiff has spent, and will continue to spend, numerous hours monitoring his credit reports, monitoring his compromised payment cards for fraudulent activity, and taking other actions necessary to protect himself from future incidents of identify fraud or theft.

44.     Plaintiff would not have given his PII to Facebook had Facebook told him that it lacked adequate computer systems and data security practices to safeguard his PII from theft.

45.     Plaintiff suffered actual injury from having his PII stolen in and as a result of the Data Breach.

46.     Plaintiff suffered actual injury in the form of damages to and diminution in the value of his PII—a form of intangible property that Plaintiff entrusted to Facebook for the purpose of purchasing its services and that was compromised in and as a result of the Data Breach.

47.     Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII being placed in the hands of criminals. Plaintiff has a continuing interest in ensuring that his PII, which remains in the possession of Facebook, is protected and safeguarded from future breaches.

48.     Plaintiff is likely to entrust Facebook with PII in the future if Facebook's data security is improved to protect against future data breaches.

### The PII Was Valuable and Prone to Attack

49.     The PII compromised in the Data Breach is highly valuable to identity thieves. User names, email addresses, recovery email accounts, telephone numbers, dates of birth, passwords, security question answers, and other valuable PII can all be used to gain access to other user accounts and websites.

50.     In the years preceding Facebook's announcement of the Data Breach, several retailers (including Sonic, Delta, Barnes & Noble, Home Depot, Neiman Marcus, Michaels, Target, Lord & Taylor, and TJ Maxx) suffered security breaches that compromised customer payment card information and other PII. These attacks were highly publicized. Facebook knew or should have known that hackers would target its customers' payment card data. Nevertheless, Facebook failed to take adequate steps to secure the payment system used in its stores.

51.     It is well known and the subject of many media reports that hackers frequently target the PII contained in a merchant's data system.

52.     A "cyber black market" exists in which criminals openly post stolen payment card numbers and other PII on a number of underground internet websites. PII is "as good as gold" to identity thieves because they can use victims' personal data to incur charges on existing accounts, or clone ATM, debit, and credit cards.

53.     The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[13] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person."[14]

54.     PII is a valuable commodity to identity thieves. As the FTC recognizes, once identity thieves have personal information, "they can drain your bank account, run up your credit cards, open new utility accounts, or get medical treatment on your health insurance."[15]

55.     Javelin Strategy and Research reports that identity thieves stole $16.8 billion in 2017.[16]

56.     At all relevant times, Facebook knew, or reasonably should have known, of the importance of safeguarding the PII and of the foreseeable

---

[13] 17 C.F.R. § 248.201 (2013).
[14] *Id.*
[15] Federal Trade Commission, *Warning Signs of Identity Theft*, available at: https://www.consumer.ftc.gov/articles/0271-warning-signs-identity-theft (last visited June 22, 2018).
[16] *See Identity Fraud Hits All Time High With 16.7 Million U.S. Victims in 2017*, available at: https://www.javelinstrategy.com/press-release/identity-fraud-hits-all-time-high-167-million-us-victims-2017-according-new-javelin (last visited June 22, 2018).

consequences of the breach of its data security system by hackers, including, specifically, the significant costs that would be imposed on its customers as a result of such a breach.

57.     Despite the frequent public announcements of data breaches at other businesses and institutions, Facebook continued to use an inadequate system to protect the PII of Plaintiff and Class Members.

58.     Facebook was, or should have been, fully aware of the significant number of people whose PII it collected and, thus, the significant number of individuals who would be harmed by a breach of its payment system.

59.     Unfortunately, despite the numerous and well publicized examples of other cybersecurity breaches, and the harm that is done to customers when PII falls into the hands of hackers, Facebook's approach to maintaining the privacy and security of the PII of Plaintiff and Class Members was reckless and negligent.

60.     The ramifications of Facebook's failure to secure the PII are severe. Reimbursing a consumer for a financial loss due to identity fraud does not make that individual whole again. On the contrary, identity theft victims must spend numerous hours and their own money repairing the impact to their credit. After conducting a study, the Department of Justice's Bureau of Justice Statistics found that in 2014 identity theft victims "reported spending an average of about 7 hours

clearing up the issues" and resolving the consequences of fraud.[17]

61.    There may be a time lag between when the harm occurs and when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[18]

62.    Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

63.    The PII of Plaintiff and Class Members is private and sensitive in nature and was inadequately protected by Facebook.

64.    The Data Breach was a direct and proximate result of Facebook's failure to properly safeguard and protect Plaintiff's and Class Members' PII from unauthorized access, use, and disclosure, as required by various state and federal regulations, industry practices, and the common law.

---

[17] *Victims of Identity Theft*, 2014 (Sept. 2015) available at: http://www.bjs.gov/content/pub/pdf/vit14.pdf (last visited May 15, 2018).
[18] GAO, Report to Congressional Requesters, at 29 (June 2007), available at ttp://www.gao.gov/new.items/d07737.pdf (last visited May 15, 2018).

65.     Facebook failed to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiff's and Class Members' PII to protect against reasonably foreseeable threats to the security or integrity of such information.

66.     Facebook had the resources to prevent a breach, but neglected to timely and adequately invest in data security, despite the growing number of well publicized data breaches.

67.     Had Facebook remedied the deficiencies in its data security systems, followed security guidelines, and adopted security measures recommended by experts in the field, Facebook would have prevented the Data Breach and, ultimately, the theft of the PII.

68.     As a direct and proximate result of Facebook's wrongful actions and inaction and the resulting Data Breach, Plaintiff and Class Members have been placed at an imminent, immediate, and continuing increased risk of identity theft, requiring them to take the time and effort to mitigate the actual and potential impact of the Data Breach on their lives including, *inter alia*, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports. This time has been lost forever and cannot be recaptured. The loss of time has been recognized as a compensable injury.

69.     Plaintiff and the Class Members were also injured in that they paid for services that were worth nothing or, at the least, less than what was paid for them due to Facebook's failure to properly secure their PII.

70.     Facebook continues to hold the PII of its customers, including Plaintiff and Class Members. Plaintiff and Class Members have an undeniable interest in insuring that their PII is secure, remains secure, is properly and promptly destroyed, and is not subject to further theft—particularly because Facebook has demonstrated an inability to prevent a breach.

## V.     CLASS ACTION ALLEGATIONS

71.     Plaintiff brings this lawsuit as a class action on behalf of himself and all others similarly situated as members of the proposed Class pursuant to pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and 23(c)(4). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

72.     The Class is defined as:

> **Nationwide Class**: All individuals residing in the United States who registered for an account, at any time, from four years prior to the filing of this complaint to the time of class certification, with Facebook whose personal or financial information was accessed, compromised, or stolen in the Data Breach (the "Nationwide Class" or "Class").

> **California Sub-Class**: All members of the Nationwide Class who registered for an account with Facebook and reside in the State of California.

73.     Collectively, the Nationwide Class and the California Sub-Class, and their class members, will be referred to herein as the "Class" and "Class Members," except where otherwise noted.

74.     Excluded from the Class are (i) Facebook, (ii) any entity in which Facebook has a controlling interest or which has a controlling interest in Facebook, (iii) Facebook's legal representatives, predecessors, successors, assigns, and employees, and (iv) the judge and staff to whom this case is assigned, and any member of the judge's immediate family.

75.     Plaintiff is a member of the Class that he seeks to represent.

76.     Members of the Class can be identified using Facebook's user account records and other information that is kept by Facebook in the usual course of business and/or in the control of Facebook. Class Members can be notified of the class action through publication on Facebook's website and mobile application and direct e-mailings to address lists maintained in the usual course of business by Facebook.

77.     Class Members are so numerous that their individual joinder is impracticable. The precise number of the Class Members is unknown to Plaintiff, but is expected to number in the hundreds of thousands based on Facebook's admissions that information associated with hundreds of thousands user accounts was stolen in the Data Breach.

78.     Common questions of law and fact predominate over the questions affecting only individual Class Members. Some of the common legal and factual questions include:

        a.     whether Facebook employed substandard security measures to protect its users' PII;

        b.     whether Facebook misled consumers about the quality of the security measures used to protect their PII;

        c.     when Facebook first knew, or should have known, of the Data Breach;

        d.     when Facebook first knew, or should have known, the full extent of the Data Breach;

        e.     whether Facebook's public statements regarding the Data Breach have been incomplete and misleading;

        f.     whether Facebook owed legal duties to its users to protect their PII;

        g.     whether Plaintiff and the Class are entitled to recover damages, restitution, and injunctive relief.

79.     Facebook engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the Class Members . Similar or identical security practices and public statements are involved. Individual questions, if any, pale by comparison to the numerous common questions that dominate.

80.     The injuries sustained by the Class Members flow, in each instance, from a common nucleus of operative facts: Facebook's failure to secure their PII, and Facebook's incomplete and misleading disclosures about its data security.

81.     Plaintiff's claims are typical of the claims of the other proposed Class Members. Plaintiff provided his personal information to Facebook and was damaged as a result of Facebook's actions.

82.     Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is familiar with the basic facts that form the basis of the proposed Class Members' claims. Plaintiff's interests do not conflict with the interests of the other Class Members that he seeks to represent. Plaintiff has retained counsel competent and experienced in class action litigation and intends to prosecute this action vigorously. Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class Members.

83.     The class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the proposed Class Members. The relief sought per individual member of the Class is small compared to the burden and expense of individual prosecution of the potentially extensive litigation necessitated by Facebook's misconduct. Furthermore, it would be virtually impossible for the Class Members to seek redress on an individual basis. Even if the Class Members themselves could afford such individual litigation, the court system could not.

84.     Individual litigation of the legal and factual issues raised by the conduct of Facebook would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale and comprehensive supervision by a single court. Given the similar nature of the Class Members' claims, a nationwide Class will be easily managed by the Court and the parties.

## FIRST CAUSE OF ACTION
**(Violation of California Business & Professions Code § 17200, et seq.)**

85.     Plaintiff incorporates by reference the allegations contained in each and every paragraph of this Complaint.

86.     Plaintiff brings this cause of action on behalf of himself and on behalf of the Nationwide Class, or in the alternative, on behalf of the California Sub-Class.

87.     As a result of their reliance on Defendant's representations and omissions, its users utilizing its social networking websites and mobile applications suffered an ascertainable loss due to Defendant's failure to provide adequate protection of its users' personal and confidential information and failure to provide sufficient and timely notice or warning of potential and actual cybersecurity breaches.

88.     California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

89.     Plaintiff and Class Members are reasonable consumers who expected Defendant to ardently protect the personal information entrusted to them and to be informed by Defendant of potential and actual cybersecurity vulnerabilities as soon as Defendant became aware of such threat.

90.     Defendant's acts and omissions were intended to induce Plaintiff and Class Members' reliance on Defendant's explicit and implied guarantee that their personal information was secure and protected, to increase the number of its users, and, ultimately, to increase Defendant's revenues. Plaintiff and the Class Members were deceived by Defendant's failure to properly implement adequate, commercially reasonable security measures to protect their personal information, and Defendant's failure to promptly notify them of the security breach. As a result, Defendant's conduct constitutes "fraudulent" business acts or practices.

91.     Defendant's conduct was and is likely to deceive consumers.

92.     In failing to implement adequate security procedures and protocols to protect Plaintiff and Class Members' personal information and promptly notify Plaintiff and Class Members of potential and actual security threats, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

93.     Defendant was under a duty to Plaintiff and Class Members to protect its users' personal information and promptly notify its users of potential and actual security threats, and other omitted facts alleged herein, because: (a) Defendant was in a superior position to know the specifics of a potential or actual security breach; and (b) Defendant actively concealed information known to it regarding potential and actual security breaches affecting its users' account information.

94.     The facts Defendant concealed from or did not disclose to Plaintiff and Class Members are material in that a reasonable person would have considered them to be important in deciding whether to utilize Defendant's social networking websites and mobile applications or cancel, change or otherwise modify their account information. Had Plaintiff and other Class Members known that Defendant failed to employ necessary and adequate protection of their personal information and would fail to timely notify them of potential security breaches, they would not have created a Facebook account or would not have provided PII to Facebook.

95.     By its conduct, Defendant has engaged in unfair competition and unlawful, unfair and fraudulent business practices. Defendant's unfair or deceptive acts or practices occurred repeatedly in Defendant's trade or business and were capable of deceiving a substantial portion of the purchasing public.

96.     As a direct and proximate result of Defendant's unlawful, unfair and deceptive practices, Plaintiff and Class Members will continue to suffer actual damages.

97.   Defendant has been unjustly enriched and should be required to make restitution to Plaintiffs and Class Members pursuant to §§ 17203 and 17204 of the California Business & Professions Code.

## SECOND CAUSE OF ACTION
### (Violation of the California Customer Records Act, California Civil Code § 1798.80, et seq.)

98.   Plaintiff incorporates by reference the allegations contained in each and every paragraph of this Complaint.

99.   Plaintiff brings this cause of action on behalf of himself and on behalf of the California Sub-Class.

100.   The California Legislature enacted Civil Code § 1798.81.5 "to ensure that personal information about California residents is protected." The statute requires that any business that "owns, licenses, or maintains personal information about a California resident … implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

101.   Defendant is a "business" as defined by Civil Code § 1798.80(a). 48. Plaintiff and California Sub-Class Members are "individual[s]" as defined by Civil Code § 1798.80(d).

102.   The personal information taken in the data breach was "personal information" as defined by Civil Code § 1798.80(e) and 1798.81.5(d), which

includes "information that identifies, relates to, describes, or is capable of being associated with, a particular individual, including, but not limited to, his or her name, signature, Social Security number, physical characteristics or description, address, telephone number, passport number, driver's license or state identification card number, insurance policy number, education, employment, employment history, bank account number, credit card number, debit card number, or any other financial information, medical information, or health insurance information."

103.   The breach of the personal information of almost 50 million Facebook users was a "breach of the security system" of Defendant as defined by Civil Code § 1798.82(g).

104.   By failing to implement reasonable security measures appropriate to the nature of the personal information of its users, Defendant violated Civil Code § 1798.81.5.

105.   In addition, by failing to immediately notify all affected users that their personal information had been acquired or may have been acquired by unauthorized persons in the data breach, Defendant violated Civil Code § 1798.82. Defendant's failure to immediately notify its users of the breach caused Class Members to suffer damages because they have lost the opportunity to immediately: (i) buy identity protection, monitoring, and recovery services; (ii) flag asset, credit, and tax accounts for fraud, including reporting the theft of their Social Security numbers to financial institutions, credit agencies, and the Internal Revenue

Service; (iii) purchase or otherwise obtain credit reports; (iv) monitor credit, financial, utility, explanation of benefits, and other account statements on a monthly basis for unrecognized credit inquiries, Social Security numbers, home addresses, charges, and/or medical services; (v) place and renew credit fraud alerts on a quarterly basis; (vi) routinely monitor public records, loan data, or criminal records; (vii) contest fraudulent charges and other forms of criminal, financial and medical identity theft, and repair damage to credit and other financial accounts; and (viii) take other steps to protect themselves and recover from identity theft and fraud.

106.   Because it violated Civil Code § 1798.81.5 and 1798.82, Defendant "may be enjoined" under Civil Code § 1798.84(e).

107.   Plaintiff requests that the Court enter an injunction requiring Defendant to implement and maintain reasonable security procedures to protect its Users' personal information, including, but not limited to, ordering that Defendants: (a) engage third party security auditors/penetration testers as well as internal security personnel to conduct testing consistent with prudent industry practices, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis; (b) engage third party security auditors and internal personnel to run automated security monitoring consistent with prudent industry practices; (c) audit, test, and train its security personnel regarding any new or modified procedures; (d) purge, delete and destroy, in a secure manner, its users

data not necessary for its business operations; (e) conduct regular database scanning and securing checks consistent with prudent industry practices; (f) periodically conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach consistent with prudent industry practices; (g) receive periodic compliance audits by a third party regarding the security of the computer systems, cloud-based services, and application software Defendant uses to store the personal information of current and former its users; (h) meaningfully educate its current and former users about the threats they face as a result of the loss of their personal information to third parties, as well as the steps they must take to protect themselves; and (i) provide ongoing identity theft protection, monitoring, and recovery services to Plaintiff and Class Members.

108.   As a result of Defendant's violation of Cal. Civ. Code § 1798.81.5, Plaintiff and Class Members have incurred and will incur damages, including but not necessarily limited to: (1) the loss of the opportunity to control how their personal information is used; (2) the diminution in the value and/or use of their personal information entrusted to Defendant for the purpose of deriving services from Defendant and with the understanding that Defendant would safeguard their personal information against theft and not allow access and misuse of their personal information by others; (3) the compromise, publication, and/or theft of their personal information; (4) out-of-pocket costs associated with the prevention,

detection, and recovery from identity theft and/or unauthorized use of financial and medical accounts; (5) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity data misuse; (6) costs associated with the ability to use credit and assets frozen or flagged due to credit misuse, including complete credit denial and/or increased costs to use credit, credit scores, credit reports and assets; (7) unauthorized use of compromised personal information to open new financial and/or health care or medical accounts; (8) tax fraud and/or other unauthorized charges to financial, health care or medical accounts and associated lack of access to funds while proper information is confirmed and corrected; (9) the continued risk to their personal information , which remain in Defendant's possession and are subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect the personal information in their possession; and (10) future costs in terms of time, effort and money that will be expended, to prevent, detect, contest, and repair the impact of the personal information compromised as a result of the data breach for the remainder of the lives of the Class Members.

109.   Plaintiff seeks all remedies available under Civil Code § 1798.84, including actual and statutory damages, equitable relief, and reasonable attorneys'

fees. Plaintiff also seek reasonable attorneys' fees and costs under applicable law including California Code of Civil Procedure § 1021.5.

### THIRD CAUSE OF ACTION
#### (Negligence)

110.    Plaintiff incorporates by reference the allegations contained in each and every paragraph of this Complaint.

111.    Plaintiff bring this cause of action on behalf of himself and on behalf of the Nationwide Class.

112.    Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting their personal information in their possession from being compromised, lost, stolen, accessed and misused by unauthorized persons. This duty included, among other things, designing, implementing, maintaining and testing Defendant's security systems and protocols, consistent with industry standards and requirements, to ensure that Plaintiff's and Class Members' personal information in Defendant's possession was adequately secured and protected. Defendant further owed a duty to Plaintiff and Class Members to implement processes that would detect a breach of its security system in a timely manner and to timely act upon warnings and alerts, including those generated by its own security systems.

113.    Defendant owed a duty of care to Plaintiff and Class Members because they were foreseeable and probable victims of any inadequate security practices. Defendant solicited, gathered, and stored the personal data provided by

Plaintiff and Class Members in the regular course of its business. Defendant knew that a breach of its systems would cause damages to Plaintiff and Class Members, and Defendant had a duty to adequately protect such sensitive personal information.

114.   Similarly, Defendant owed a duty to Plaintiff and Class Members to timely disclose any incidents of data breaches, where such breaches compromised the personal information of Plaintiff and Class Members. Plaintiff and Class Members were foreseeable and probable victims of any inadequate notice practices. Defendant knew that, through its actions and omissions, it had caused the sensitive personal information of Plaintiff and Class Members to be compromised and accessed by unauthorized third parties yet failed to mitigate potential harm to its users by providing timely notice of the security breach.

115.   Defendant breached the duties owed to Plaintiff and Class Members by failing to exercise reasonable care in the adoption, implementation, and maintenance of adequate security procedures and protocols and by failing to timely notify Plaintiff and Class Members of potential and actual security breaches. Defendant's breach of the duties owed to Plaintiff and Class Members caused injuries to Plaintiff and Class Members, including but not limited to a) theft of their personal information; b) costs associated with the detection and prevention of identity theft; c) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate and mitigate the actual and future

consequences of the aforementioned data breaches, including without limitation

finding fraudulent charges, cancelling and reissuing credit cards and bank

accounts, purchasing credit monitoring and identity theft protection, and the stress,

nuisance and annoyance of dealing with all issues resulting from the data breaches;

d) the imminent and impending injury flowing from potential fraud and identity

theft posed by the unauthorized control and use of their personal information by

third parties; e) damages to and diminution in value of their personal information

entrusted to Defendants with the understanding that Defendants would safeguard

their data against theft and not allow access and misuse of their data by others; and

f) the continued risk to their personal information, which remains in Defendant's

and which is subject to further breaches so long as Defendant fails to undertake

appropriate and adequate measures to protect data in their possession.

116.   But for Defendant's negligent and wrongful breach of the duties owed

to Plaintiff and Class Members, Plaintiff and Class Members would not have been

harmed and could have taken remedial measures to protect their personal

information.

117.   Plaintiff and Class Members are entitled to and seek actual damages

and reasonable attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**(Deceit by Concealment, Cal. Civ. Code §§ 1709, 1710)**

118.   Plaintiff incorporates by reference the allegations contained in each

and every paragraph of this Complaint.

119.   Plaintiff brings this cause of action on behalf of himself and on behalf of the California Sub-Class.

120.   Defendant had an obligation to disclose to all class members that their Facebook accounts and PII were an easy target for hackers and Defendant was not implementing measures to protect them.

121.   Defendant did not do these things. Instead, Defendant willfully deceived Plaintiff and the Class by concealing the true facts concerning their data security, which Defendant was obligated to, and had a duty to, disclose. Additionally, Facebook made numerous representations following the prior exposures to ensure users that their PII and other data was safe, and Facebook was dedicated to maintaining that security.

122.   Had Defendant disclosed the true facts about its poor data security, Plaintiff and the Class would have taken measures to protect themselves. Plaintiff and the Class justifiably relied on Defendant to provide accurate and complete information about Defendant's data security, and Defendant did not.

123.   Alternatively, given the security holes in Defendant's services and Defendant's refusal to take measures to detect those holes, much less fix them, Defendant simply should have shut down their current service. Independent of any representations made by Defendant, Plaintiff and the Class justifiably relied on Defendant to provide a service with at least minimally adequate security measures and justifiably relied on Defendant to disclose facts undermining that reliance.

124.   Rather than cease offering a clearly unsafe and defective service or disclosing to Plaintiff and the Class that its services were unsafe and users' PII was exposed to theft on a grand scale, Defendant continued on and concealed any information relating to the inadequacy of their security.

125.   These actions are "deceit" under Cal. Civil Code § 1710 in that they are the suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact.

126.   As a result of this deceit by Defendant, it is liable under Cal. Civil Code § 1709 for "any damage which [Plaintiff and the Class] thereby suffer[]."

127.   As a result of this deceit by Defendant, the PII of Plaintiff and the Class were compromised, placing them at a greater risk of identity theft and subjecting them to identity theft, and their PII was disclosed to third parties without their consent. Plaintiff and Class Members also suffered diminution in value of their PII in that it is now easily available to hackers on the Dark Web. Plaintiff and the Class have also suffered consequential out of pocket losses for procuring credit freeze or protection services, identity theft monitoring, and other expenses relating to identity theft losses or protective measures.

128.   Defendant's deceit as alleged herein is fraud under Civil Code § 3294(c)(3) in that it was deceit or concealment of a material fact known to the Defendant conducted with the intent on the part of Defendant of depriving Plaintiff

and the Class of "legal rights or otherwise causing injury." As a result, Plaintiff and the Class are entitled to punitive damages against Defendants under Civil Code § 3294(a).

## VI.  PRAYER FOR RELIEF

129.   Plaintiff, on behalf of himself, and all others similarly situated, requests the Court enter judgment against Defendant, as follows:

(a)     An order certifying the proposed Class, designating Plaintiff as named representatives of the Class, and designating the undersigned as Class Counsel;

(b)     An order enjoining Defendant from further unfair and deceptive business practices regarding the maintenance and protection of its users' personal information;

(c)     An award to Plaintiff and the Class for compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

(d)     A declaration that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten revenues they collected from their conduct alleged herein, or make full restitution to Plaintiff and Class Members;

(e)     An award of attorneys' fees and costs, as allowed by law;

(f)     An award of attorneys' fees and costs pursuant to California

Code of Civil Procedure § 1021.5;

(g)     An award of pre-judgment and post-judgment interest, as

provided by law; and

(h)     Such other relief as may be appropriate under the

circumstances.

## VII.  JURY DEMAND

130.   Pursuant to Federal Rule of Civil Procedure 38(b) and Northern

District of California Local Rule 3-6, Plaintiff demands a trial by jury of any and

all issues in this action so triable.

DATED: October 24, 2018          /s/ *Marc L. Godino*
                                 Marc L. Godino
                                 Email: mgodino@glancylaw.com
                                 **GLANCY PRONGAY & MURRAY LLP**
                                 1925 Century Park East, Suite 2100
                                 Los Angeles, California 90067
                                 Telephone: 310-201-9150
                                 Facsimile: 310-432-1495

                                 Brian Murray (*Pro Hac Vice* to be filed)
                                 Email: bmurray@glancylaw.com
                                 **GLANCY PRONGAY & MURRAY LLP**
                                 230 Park Avenue, Suite 530
                                 New York, New York 10169
                                 Telephone: 212-682-5340
                                 Facsimile: 212-884-0988

                                 Paul C. Whalen (*Pro Hac Vice* to be filed)
                                 Email: paul@paulwhalen.com
                                 **LAW OFFICE OF PAUL C. WHALEN, P.C.**
                                 768 Plandome Road
                                 Manhasset, NY 11030
                                 Telephone: 516-426-6870
                                 Facsimile: 212-658-9685

Jasper D. Ward (*Pro Hac Vice* to be filed)
Email: jasper@jonesward.com
**JONES WARD PLC**
1205 E Washington St, Suite 111
Louisville, Kentucky 40206
Telephone: 502-882-6000

*Attorneys for Plaintiff and the Class*